1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

11

12

13

ARWA ALAWI,

                    Plaintiff,

          v.

SPRINT NEXTEL CORP.,

                    Defendant.

NO.  C07-0077JLR

ORDER DENYING MOTION FOR
SUMMARY JUDGMENT

14

15

16

17

          This matter comes before the court on Defendant's motion for summary judgment
(Dkt. # 24).  Having reviewed the motion together with all documents filed in support
and in opposition, the court DENIES Defendant's motion.

18

                              I.    BACKGROUND[1]

19

**A.    Arwa Alawi**

20

21

          Arwa Alawi was born in Yemen, but moved to the United States at a very young
age.  Venneberg Decl. (Dkt. # 35), Ex. A ("Alawi Dep.") at 182.  Ms. Alawi is a

22

23

24

          [1]  Pursuant to the summary judgment standard, all evidence is presented in the light most
favorable to Ms. Alawi.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630
(9th Cir. 1987).  The truth of Ms. Alawi's evidence is assumed in situations where the evidence
conflicts.  *Id.*

25

ORDER DENYING MOTION FOR SUMMARY JUDGMENT- 1

1   practicing Muslim. *Id.* In approximately 1998, Ms. Alawi began selling cellular phone

2   contracts to her coworkers. *Id.* at 20–22. She obtained most of her clients through the

3   auto industry, where she would first deal with a corporation and then make a

4   presentation to its employees. *Id.* at 23–26. Once Ms. Alawi had a significant number

5   of clients, she opened Magic Cellular, a physical location for clients to visit her. *See id.*

6   at 33–35. While operating Magic Cellular, Ms. Alawi was required to activate 100 cell

7   phone plans per month. *Id.* at 41–42. When Ms. Alawi moved to Washington in 2005,

8   she elected not to continue selling wireless phone plans because the cost of opening

9   storefronts in Washington was prohibitive. *See id.* at 166.

10          Ms. Alawi first learned of Sprint Nextel Corporation's ("Sprint's") Account

11  Executive position from a website that provides information about positions available in

12  the cellular phone industry. *Id.* at 167–68. After applying for the position, Lisa Lopez,

13  Sprint's Strategic Recruiter, contacted Ms. Alawi to schedule an interview. *See id.* To

14  expedite the hiring process, Ms. Lopez asked Ms. Alawi to take an ePredix assessment

15  test[2] that night and call when it was completed. *Id.* at 183–84. Ms. Alawi scored a

16  perfect 100% on the ePredix test. Vanneberg Decl., Ex. D ("Lopez Notes") at 1. Ms.

17  Lopez then informed Ms. Alawi that the last step in the application process was an

18  interview with Kim Page, a Sales Manager for Sprint. *See* Alawi Dep. at 183–84.

19          The next morning, April 6, 2006, Ms. Alawi testified that she went to her

20  interview dressed in a black pants suit and a beige dress shirt. *Id.* at 193. Ms. Alawi

21  arrived for her interview 15 minutes early and took a seat in "a booth" to wait for her

22

23          [2] Sprint requires all applicants to take its proprietary ePredix test which tests for (1) sales
     potential, (2) drive and initiative, (3) self-confidence and autonomy, (4) interpersonal skills, (5)
24  responsibility and commitment, and (6) focused innovation. *See* Lopez Dep. at 84–86; Lopez Decl.,
     Ex. E at 1. Applicants must score 30% to be eligible for hire. *See* Lopez Dep. at 84–85.

25  ORDER DENYING MOTION FOR SUMMARY JUDGMENT- 2

scheduled interview time.  *Id.* at 199–200, 202.  While Ms. Alawi was waiting, Ms. Page approached her and asked if she was at Sprint for an interview.  *Id.*  Ms. Page and Ms. Alawi then exchanged pleasantries and Ms. Alawi followed Ms. Page into her office.  *Id.* at 202–03.

Upon entering the office, Ms. Page commented that Ms. Alawi's name was pretty and asked if it was Hawaiian.  Alawi Dep. at 203.  Ms. Alawi stated her name was Middle Eastern, at which point Ms. Page asked Ms. Alawi about her nationality.  *Id.*  Ms. Alawi said she was from Yemen.  *Id.*  Ms. Page then asked if Ms. Alawi was Muslim and Ms. Alawi responded affirmatively.  *Id.*  Ms. Page next stated that she was Mormon and pointed out similarities between the two religions.  *See id.* at 203–04.  Ms. Page told Ms. Alawi that she had spoken with a Persian coworker who was Muslim, and he said that "all of us Muslims have [jihad] in our hearts.  It's just a matter of when we would be able to use it."  *Id.* at 204.  Ms. Page appeared unhappy with this statement and asked Ms. Alawi her opinion about it.  *Id.*  At this point, Ms. Alawi was "trembling . . . nervous and . . . nonresponsive."  *Id.*  She did not want to insult Ms. Page and eventually responded "that religion is . . . whatever is in someone's heart."  *Id.* at 204–05.

Ms. Page continued the discussion about religion by informing Ms. Alawi that practicing Mormonism in Washington was more difficult than in Utah.  *See* Alawi Dep. at 205.  Although Ms. Alawi is unfamiliar with Mormonism, she understood Ms. Page to mean that Mormonism was more socially acceptable in Utah than it is in Washington. *See id.* at 207.  Ms. Alawi did not respond to Ms. Page's comments about Mormonism and eventually Ms. Page began the substantive part of the interview.  *Id.* at 206.

1    The substantive portion of Ms. Alawi's interview, however, lasted only five to

2    ten minutes.  Alawi Dep. at 210.  Ms. Alawi's interview consisted of Ms. Page asserting

3    that Ms. Alawi was familiar with the cellular industry and asking if Ms. Alawi had any

4    questions.  *Id.* at 221.  Ms. Alawi inquired as to the position's salary, quota for

5    activations and how the quota affected her "commission salary."  *Id.* at 221–22.  Ms.

6    Page informed Ms. Alawi that the quota was 45 activations per month and that the

7    annual salary was $60,000.  *Id.*  The interview concluded with Ms. Alawi assuring Ms.

8    Page that she would have no problem meeting the quota and reiterating that she was the

9    right candidate for the job because of her familiarity with Sprint's products, as well as

10   the competition's.  *Id.* at 226–27.  Ms. Page informed Ms. Alawi that she was required

11   to continue interviewing candidates for two weeks and that a decision would be made

12   shortly thereafter.  *Id.* at 227.

13   After the interview, Ms. Alawi spoke with her sister and recounted the events of

14   the interview in detail.  *Id.* at 234–37.  Ms. Alawi's sister insisted that Ms. Alawi send

15   Ms. Lopez a thank you letter to show her "desire for the position."  *Id.* at 236.  Ms.

16   Alawi then sent an email to Ms. Lopez thanking her for the interview and stating that

17   Ms. Page was "wonderful."  *Id.* at 236–37; Lopez Notes at 1.

18   The next morning, April 7, Ms. Page spoke with Ms. Lopez about Ms. Alawi.

19   Venneberg Decl., Ex. B ("Lopez Dep.") at 95–96.  During that conversation, Ms. Page

20   stated that Sprint would not hire Ms. Alawi, but that Ms. Alawi would be a good fit for a

21   retail position because of her experience.  *Id.* at 134–38.  At that time, Ms. Page made

22   no mention of (1) Ms. Alawi not being qualified for the position, (2) Ms. Alawi's attire,

23   (3) the discussion between Ms. Alawi and herself regarding religion, or (4) anything

24   unusual about Ms. Alawi's interview.  *Id.* at 97.

25

ORDER DENYING MOTION FOR SUMMARY JUDGMENT- 4

1    Ms. Lopez then called Ms. Alawi and informed her of Sprint's decision. *Id.* at

2    98. Ms. Alawi acted surprised and asked why she did not get the position. *Id.* 98. Ms.

3    Lopez told Ms. Alawi that she was passed on because Sprint had "a candidate with three

4    years of B2B direct sales experience." *Id.* 98–99. A candidate who has B2B direct

5    sales experience "is someone that has experience with cold-calling and prospecting

6    medium to large sized businesses." *Id.* at 135. Ms. Alawi responded that she was

7    surprised Sprint filled the position so quickly because Ms. Page said that interviewing

8    for the position would continue for at least the rest of the week. *See id.* at 101; Lopez

9    Notes at 1. Ms. Lopez testified that Ms. Alawi suggested the reason she was not

10   extended a job offer was because "she was from Iran. She brought up Jihad and the

11   Koran."[3] Lopez Dep. at 106; Lopez Notes at 1. After her conversation with Ms. Alawi,

12   Ms. Lopez called Ms. Page to tell her that Ms. Alawi "was very upset and that Arwa

13   [Alawi] brought up the issue that she thought we had passed on her because she was

14   from Iran and she had brought up jihad" and the Koran. Lopez Notes at 1. Ms. Page

15   acknowledged that Ms. Alawi had "brought this up" in the interview but that Ms. Page

16   diffused the situation by informing Ms. Alawi that she "new [*sic*] someone with the

17   same religion." *See id.*

18   Ms. Alawi called Ms. Lopez again later that day to inquire why she did not get

19   the job. *Id.*; Lopez Dep. at 107. Again, Ms. Lopez stated that Ms. Alawi did not get

20   the job because there was another candidate with three years of direct B2B outside sales

21   experience. Lopez Notes at 1. Ms. Lopez informed Ms. Alawi that Sprint had found its

22   "final candidate." Lopez Dep. at 108.

23

24        [3] Ms. Lopez testified that Ms. Alawi said she was from Iran, even though Ms. Alawi testified
     that she is from Yemen. *Compare* Lopez Dep. at 106 *with* Alawi Dep. at 182.

25

ORDER DENYING MOTION FOR SUMMARY JUDGMENT- 5

1    **B.    The Other Candidates**

2        Sprint considered other applicants for the Account Executive position and offered

3    the job first to Chris Butler and then to Norma O'Malley.  *See* Thomas Decl. (Dkt. #

4    30), Ex. C, at 164–73.  Chris Butler applied for the Account Executive position with

5    Sprint on April 9, 2006, two days after Ms. Alawi was rejected for the position.  Lopez

6    Dep. at 120.  Mr. Butler did not score as high as Ms. Alawi on the ePredix assessment

7    test.  *See* Lopez Dep. at 121; Lopez Decl., Ex. K.  Mr. Butler also had no experience in

8    the wireless industry.  *See* Lopez Decl., Ex. J.  After he went through the interview

9    process, Mr. Butler was offered Sprint's Account Executive position and declined it.

10   Lopez Dep. at 123.

11       Norma O'Malley applied for Sprint's Account Executive position on April 14,

12   one week after Ms. Alawi's rejection.  Vanneberg Decl., Ex. C ("Page Dep.") at 173.

13   Ms. O'Malley also did not score as high as Ms. Alawi on the ePredix test.  *Id.* at

14   128–29.  Additionally, she had no experience in the wireless industry.  *See* Lopez Decl.,

15   Ex. M.  Ms. O'Malley was extended a job offer for the Account Executive position and

16   accepted.  Page Dep. at 173.

17                                  **II.    DISCUSSION**

18       Sprint contends it is entitled to summary judgment because (1) Ms. Alawi was

19   not qualified for the position and cannot establish a prima facie case of discrimination,

20   and (2) Sprint had legitimate, non-discriminatory and non-pretextual reasons for not

21   hiring Ms. Alawi.  Mot. (Dkt. # 24) at 3.  Based on the record, the court is satisfied that

22   Ms. Alawi has presented sufficient evidence to support both her prima facie case and her

23   contention that Sprint's reasons for not hiring her were a pretext for discrimination.

24

25

ORDER DENYING MOTION FOR SUMMARY JUDGMENT- 6

1    **A.      Summary Judgment Standard**

2           Summary judgment is appropriate when the moving party demonstrates there is

3    no genuine issue as to any material fact and that the moving party is entitled to judgment

4    as a matter of law.  Fed. R. Civ. P. 56(c).  The party moving for summary judgment

5    "bears the initial responsibility of informing the district court of the basis for its motion

6    and identifying those portions of 'the pleadings, depositions, answers to interrogatories,

7    and admissions on file, together with the affidavits, if any,' which it believes

8    demonstrates the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*,

9    477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

10          Once the moving party satisfies its initial responsibility, the burden shifts to the

11   nonmoving party to establish the existence of a genuine issue as to any material fact.

12   *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86

13   (1986).  The party opposing summary judgment must demonstrate that the facts in

14   contention are material and that the dispute is genuine.  *Lindahl v. Air France*, 930 F.2d

15   1434, 1436 (9th Cir. 1991).  A dispute is genuine if the evidence is such that a

16   reasonable jury could return a verdict for the nonmoving party.  *Id; see Matushita Elec.*,

17   475 U.S. at 486.  The evidence presented by the nonmoving party is to be believed, and

18   all reasonable inferences that may be drawn from the facts must be drawn in the light

19   most favorable to the nonmoving party.  *Lindahl*, 930 F.2d at 1437.

20          In analyzing Sprint's motion for summary judgment, the court relies primarily on

21   Ms. Alawi's sworn deposition testimony regarding her April 6, 2006, interview with Ms.

22   Page.  At this stage in the litigation, the court is to view this evidence in the light most

23   favorable to Ms. Alawi.  Given the severity of Ms. Alawi's allegations, as well as the

24   strength of the evidence presented, the court is troubled by the unsubstantiated and

25

ORDER DENYING MOTION FOR SUMMARY JUDGMENT- 7

1   baseless arguments made by Sprint.  Sprint's assertion that Ms. Alawi's evidence

2   consists of "irrelevant, subjective, conclusory and self-serving opinions" lacks

3   grounding in the law or reality, and Sprint's characterization of Ms. Alawi's sworn

4   testimony as "hyperbole and rhetoric" serves only to further diminish Sprint's credibility

5   with the court.  *See* Reply (Dkt. # 36) at 1 & 3.

6   **B.    Discrimination**

7       **1.   The *McDonnell Douglas* Standard**

8           Arwa Alawi sued Sprint for discriminating against her based on her race, national

9   origin and religion, in violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000e-3(a) ("Title

10  VII"), and the Washington Law Against Discrimination, RCW 49.60.210 ("WLAD").

11  This matter is governed by the familiar burden-shifting framework set forth in

12  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[4]  Under the *McDonnell*

13  *Douglas* standard, Ms. Alawi must first establish a prima facie case of racial, religious

14  or national origin discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  Once a prima

15  facie case is demonstrated, the burden shifts to Sprint to articulate a legitimate,

16  nondiscriminatory reason for not hiring Ms. Alawi.  *See McDonnell Douglas*, 411 U.S.

17  at 802; *Chaung v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1123–24

18  (9th Cir. 2000).  The burden then shifts back to Ms. Alawi to show that Sprint's stated

19  reasons for rejecting her application were a pretext for discrimination.  *See McDonnell*

20  *Douglas*, 411 U.S. at 804.  Ms. Alawi need only raise a genuine issue of material fact to

21

22

23      [4] This burden-shifting framework applies to claims brought under 42 U.S.C. § 1981 and the
    WLAD.  *See Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 470 F.3d 827, 837–38 (9th
24  Cir. 2006); *Kastanis v. Educ. Employees Credit Union*, 859 P.2d 26, 30 (Wash. 1993).

25  ORDER DENYING MOTION FOR SUMMARY JUDGMENT- 8

1    survive summary judgment, and she need not produce additional evidence of

2    discrimination.  *Id.*

3        **2.  Prima Facie Case**

4        Ms. Alawi has established a prima facie case that Sprint discriminated against her

5    based on her race, religion and national origin.[5]  Ms. Alawi's prima facie case is

6    established because (1) she is a member of a protected class, (2) she is qualified for the

7    position, (3) she was rejected for the position, and (4) the position remained open after

8    her rejection and Sprint continued to seek applicants. *See Norris v. City and Co. of San*

9    *Francisco*, 900 F.2d 1326, 1329 (9th Cir. 1990).

10       Sprint does not dispute that Ms. Alawi is a member of certain protected classes,

11   that she was rejected for the Account Executive position and that the position remained

12   open after her rejection.  *See* Mot. at 15–16.  Although Sprint argues that Ms. Alawi was

13   not qualified for the position, Lisa Lopez, a Strategic Recruiter for Sprint, determined

14   that Ms. Alawi was "highly qualified" for the position.  Lopez Dep. at 66–68.

15   Additionally, Ms. Page testified that saying Ms. Alawi "wasn't the best choice for the

16   position" was more accurate than saying Ms. Alawi was unqualified for the position.

17   *See* Page Dep. at 155–56.

18       **3.  Pretext**

19       Sprint has set forth reasons for why Ms. Alawi was not awarded the Executive

20   Account position that, on their face, appear legitimate and nondiscriminatory.  For

21   example, Sprint contends that (1) Ms. Alawi lacked outside sales experience, (2) Ms.

22   _____

23       [5] Sprint's motion to strike Ms. Alawi's deposition testimony is denied.  Although Ms. Alawi is prohibited from creating genuine issues of material fact in a deposition that contradicts her previous statements, minor inconsistencies are not a sufficient basis to exclude her testimony.  *See Messick v.*

24   *Horizon Industries, Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995).

25   ORDER DENYING MOTION FOR SUMMARY JUDGMENT- 9

1   Alawi dressed inappropriately for her job interview, and (3) there were two other

2   candidates for the position that were more qualified than Ms. Alawi.  *See* Mot. at 16–18.

3   Because Sprint's explanations rebut Ms. Alawi's prima facie case of discrimination, the

4   burden shifts back to Ms. Alawi to show that Sprint's reasons for not hiring her were

5   pretextual.

6          Ms. Alawi's evidence demonstrates that Sprint's reasons for rejecting her

7   application were a pretext for discriminating against her.  "[A] plaintiff can prove

8   pretext in two ways: (1) indirectly, by showing that the employer's proffered

9   explanation is 'unworthy of credence' because it is internally inconsistent or otherwise

10  not believable, or (2) directly, by showing that unlawful discrimination more likely

11  motivated the employer."  *Chaung*, 225 F.3d at 1127 (citing *Godwin v. Hunt Wesson,*

12  *Inc.*, 150 F.3d 1217, 1220–22 (9th Cir. 1998)).  Here, Ms. Alawi has introduced a

13  substantial amount of indirect evidence to suggest that Sprint's reasons for rejecting her

14  application were pretextual.

15         Sprint's main contention is that Ms. Alawi was not qualified for the position

16  because she lacked (1) the necessary sales experience and (2) the qualifications set

17  forth in the job description.  Mot. at 16.  Both of Sprint's arguments lack merit.  Lisa

18  Lopez repeatedly stated that Ms. Alawi was "highly qualified" for the position.  *See*

19  Lopez Dep. at 66–68.  Ms. Alawi scored a perfect 100% on the required ePredix

20  assessment test.  *See* Lopez Notes at 1; Page Dep. at 170–72.  Ms. Alawi has a B.S.

21  and seven years of experience in the wireless industry, whereas Sprint only required a

22  B.S. and one to three years of related experience for the position.  Vanneberg Decl.,

23  Exs. E–G.  Sprint contends that B2B sales experience was required for the position and

24  Ms. Alawi's lack of this experience made her unqualified for the position.  Mot. at

25  ORDER DENYING MOTION FOR SUMMARY JUDGMENT- 10

15–16.  However, Sprint's job description for the Account Executive position does not require B2B sales experience.  *See* Lopez Decl., Ex. B.  Additionally, Ms. Lopez testified that B2B experience was only necessary for the Account Executive II position.  *See* Lopez Dep. at 68.  Ms. Alawi applied for the Account Executive I position.  At a minimum, a genuine issue exists as to whether B2B sales experience was a necessary prerequisite for the Account Executive I position.

Sprint also contends Ms. Page's comments to Ms. Alawi about her religion and national origin were "stray remarks" and do not give rise to an inference of discrimination.  Mot. at 20–21.  "Stray remarks" are single, isolated statements that are not related to the decisional process.  *See Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438–39 (9th Cir. 1990).  Here, Ms. Page engaged in a prolonged conversation with Ms. Alawi about (1) Ms. Alawi's national origin, (2) whether Ms. Alawi was a Muslim and (3) Ms. Alawi's opinion of jihad.  Alawi Dep. at 203–04.  This conversation took place at the beginning of a job interview, a job for which Ms. Alawi was ultimately not hired.  Ms. Page's comments were anything but "stray remarks."

Some of Sprint's explanations for not hiring Ms. Alawi are also internally inconsistent.  Although Sprint contends Ms. Alawi was not qualified for the Account Executive position, Ms. Lopez stated that Ms. Alawi was "highly qualified" for the position and had "the wireless knowledge."  *See* Lopez Dep. at 66–68, 88.  Ms. Lopez also stated that when she first spoke with Ms. Page after Ms. Alawi's interview, Ms. Page had only positive things to say about Ms. Alawi.  *Id.* at 137–38.  Sprint's accounts of Ms. Alawi's attire are similarly inconsistent.  Ms. Page alleges Ms. Alawi was wearing a "very short, slinky" skirt.  Page Dep. at 98–100.  However, Harvey Salzberg, a Public Sector Sales Manager for Sprint, testified that when he saw Ms.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT- 11

Alawi that same day, she was wearing culottes, which are "a women's or girl's garment consisting of *trousers* made full in the legs to resemble a skirt."  Webster's New World Dictionary, Third College Edition 337 (Victoria Neufeldt ed. 1988) (emphasis added).

Finally, Sprint argues that it passed on Ms. Alawi because Chris Butler and Norma O'Malley were stronger candidates for the Account Executive position.  Mot. at 16–17.  However, neither Mr. Butler nor Ms. O'Malley were candidates for the position when Sprint rejected Ms. Alawi.  *See* Lopez Dep. at 120–21, 127. Additionally, neither Mr. Butler nor Ms. O'Malley had any experience in the wireless industry.  *See* Lopez Decl., Exs. J & M.

The evidence suggests that Sprint's explanations for not hiring Ms. Alawi may be a pretext for discrimination given (1) Ms. Page's comments about Islam, Yemen and jihad during Ms. Alawi's job interview, (2) Sprint's own employees' inconsistencies in assessing whether Ms. Alawi was qualified for the position, (3) inconsistencies in Sprint's employees' perceptions of Ms. Alawi's interview attire, and (4) Sprint's contention that Ms. O'Malley and Mr. Butler were candidates for the position at the time it informed Ms. Alawi that she would not be hired.  These inconsistencies between Sprint's own employees' testimony illustrate the material facts that are in dispute.  Additionally, Ms. Page's inquiries into Ms. Alawi's religion create an inference of discrimination that Sprint has not successfully rebutted.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT- 12

1

2                                    **III.    CONCLUSION**

3          For these reasons, the court DENIES Sprint's motion for summary judgment

4    (Dkt. # 24).

5          Dated this 13th day of March, 2008.

6

7                                                   JAMES L. ROBART
                                                    United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   ORDER DENYING MOTION FOR SUMMARY JUDGMENT- 13